Filed 8/17/15  In re M.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063215 |
| Plaintiff and Respondent, | (Super.Ct.No. J254063) |
| v. | OPINION |
| V.E. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant V.E.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant V.M.

1

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

Appellants V.E. (mother) and V.M. (father) appeal the termination of their parental rights to their daughter, M.M., following a Welfare and Institutions Code[1] section 366.26 hearing. Mother contends the juvenile court erred by failing to apply the parental benefit exception of section 366.26, subdivision (c)(1)(B)(i). Father contends that if this court reverses the order terminating mother's parental rights, it must reverse the order terminating his parent rights. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

In March 2014, mother took seven-month-old M.M. (M.M., or child) to the hospital for severe constipation.[2] An examination and x-rays revealed deformities to M.M.'s 5th, 6th, and 7th ribs. A forensic examination by Amy Young, M.D., revealed four healing left rib fractures and a healing right humorous fracture. Dr. Young could not determine the date of the injuries or the exact stage of healing. Mother provided various accounts that could have caused the injuries, but none were consistent with the child's injures.

Given the nature of M.M.'s injuries and mother's failure to know what caused them, San Bernardino Children and Family Services Agency (CFS) obtained a detention

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] On May 5, 2015, we incorporated the record in case No. E061703 in the record in this case.

2

warrant.  On April 2, 2014, a section 300 petition was filed, alleging serious physical harm (subd. (a)), failure to protect (subd. (b)), and severe physical abuse (subd. (e)).[3] According to mother, father is M.M.'s biological father; he does not live with them or support them.  The juvenile court found a prima facie case to detain the child out of the home and ordered supervised visitation.

The jurisdiction/disposition report filed on April 25, 2014 recommended that M.M. be detained outside the home pending further testing.  There was no child welfare history for either parent, both of whom insisted they had not inflicted harm on the child.  Father thought the only possible causes were the "home remedies/healing" administered by parents on M.M. "since she was about a month old."[4]  Mother and father (who was in the United States illegally) never lived together and were not in a committed relationship.  Given the nature of the M.M.'s injuries, the examining physician suspected physical abuse.  M.M. also had slightly elevated choline levels, which suggests prior traumatic injury to the brain.  Mother reported that they had been in a car accident when M.M. was one month old.  The child was sitting in mother's lap and she was not wearing a seatbelt.  A contested jurisdiction/disposition hearing was set.

---

[3]  The petition was amended on April 25, 2014, to include father in the allegations. At the April 28, 2014, hearing on the amended petition, the child was continued detained. The child has three older half siblings who are not parties to this appeal.

[4]  The social worker spoke with many professionals of Latino descent and they reported that traditional medical treatments were not acceptable in Western medicine. They further stated they were unaware of any child who suffered any injuries from such treatments.

In the addendum report filed on July 9, 2014, CFS recommended no family reunification services for M.M. be provided to either parent. A Children's Assessment Center (CAC) medical examination performed on May 19, 2014, noted that M.M. had "numerous traumatic injuries," at various healing stages, without explanation. Dr. Young concluded the injuries were caused by physical abuse. A police officer investigating this case considered the injuries to be non-accidental because of the inconsistency in the parents' statements of the history of the child's medical care. The officer's report noted that the child was often watched by mother's 14-year-old son. The son reported that when he told mother it felt like M.M.'s ribs were cracking when he picked her up, mother replied that it was nothing. The son admitted being frustrated with having to watch M.M., but added that mother would get frustrated with and yell at M.M. when she would not fall asleep and mother was tired.

At the August 4, 2014, jurisdiction hearing, mother objected to the allegations and submitted to the court. Father also objected; however, he had no affirmative evidence. The juvenile court sustained the allegations in the dependency petition. At the August 6, 2014, disposition hearing, the court found father to be the presumed father of M.M., declared the child to be a dependent of the court, ordered her removed from her parents' care, and placed her in a concurrent planning home. The court denied services under section 361.5, subdivision (b)(5), and set a section 366.26 permanency planning hearing. The parents were advised of their writ rights. On August 12, 2014, mother filed a notice of intent to file a writ petition; however, the petition was dismissed on September 11, 2014, pursuant to mother's request.

4

In the section 366.26 report filed on November 24, 2014, CFS recommended the juvenile court terminate parental rights and order adoption as the child's permanent plan. The child had been living with her prospective adoptive parent since being detained, and the two were bonded. The prospective adoptive mother was 59 years old with three adult children from two previous marriages. M.M. was described as "a very happy baby girl who smiles often and is very affectionate." She was in good health and meeting most of her developmental milestones, although the social worker was concerned that she was not walking (she was 15 months old) and had a flat-shaped head. Both parents were consistent in their visitation and the child enjoyed spending time with them. They requested the section 366.26 hearing be set contested.

On December 12, 2014, mother filed a section 388 petition requesting reunification services and increased visitation. Mother pointed out that she was receiving services for M.M.'s siblings, she was in compliance with those services, and M.M. was very close with her siblings. In response, CFS opposed changing any orders on the grounds there is no evidence that mother is aware of what steps and changes are necessary to protect the child from further abuse, nor is there any evidence that mother has taken responsibility for her part in the child's injuries. When M.M. was initially detained, she could not hold her bottle; however, within two days of the prospective adoptive mother's care, she learned how to do so. The child continued to develop on target and she was attached to her caregiver. CFS acknowledged that mother was receiving services for her older children; however, it was unclear whether she would be

5

reunifying with them. Two of the teenage children told the social worker they were not sure if they wanted to reunify with mother. They were addressing this issue in therapy.

On January 9, 2015, the juvenile court denied mother's request for an evidentiary hearing on her section 388 petition on the grounds it failed to establish a prima facie showing. On January 16, 2015, father filed a section 388 petition requesting reunification services and liberalized visitation. The court summarily denied the petition on that same day.

A contested section 366.26 hearing was held on March 26, 2015. Father testified that he regularly visited M.M., who enjoys playing with him because "she hugs [him] and she kisses [him]." He opined that she loves him because when he sees her "she comes out running and yelling to be able to hold [him]." Father's visits were not supervised, and the child had never lived with him. Mother testified she spent two to four hours with M.M. each week that were supervised by the prospective adoptive mother and included her older children. According to mother, M.M. called her "mommy" and at the end of the visits she would cry when placed in her car seat because she did not want to be in the seat. When asked why it was in the child's best interest not to be adopted, mother replied, "Well, I will actually like her to be with me." Mother acknowledged that M.M. would also call the prospective adoptive mother "mom" while M.M.'s siblings called her "Auntie Katie."

The juvenile court noted that to terminate parental rights, it need only make two findings, i.e., that the child will be adopted, and that there has been a prior determination that reunification services shall be terminated. The court observed that services were

6

never offered. It then stated that it shall terminate parent rights unless there is a compelling reason that such termination would be detrimental to the child due to specific circumstances, namely, the beneficial relationship with the parent.[5] Considering the parent bond exception, the court agreed that the parents had consistently visited with the child; however, it described the visits as "friendly visits." They played, interacted, ate, and went to the movies. "There's nothing about taking care of the child on a day-to-day basis, taking care of the child's needs, or having . . . the mother and father attend to the child's needs." Thus, the court found that the parents had not met their burden to establish a parental bond exception to adoption. After finding clear and convincing evidence the child would be adopted, the court terminated parental rights.

## II. BENEFICIAL PARENTAL RELATIONSHIP EXCEPTION

Mother contends the juvenile court erred by finding the parent-child "benefit exception" of section 366.26 did not apply. We disagree.

"Adoption must be selected as the permanent plan for an adoptable child and parental rights terminated unless the court finds 'a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. . . .' (§ 366.26, subd. (c)(1)(B).)" (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*).) Under these provisions, "the court must order adoption and its necessary consequence,

---

[5] Counsel for M.M.'s siblings advised the court that the siblings do not object to the recommendation of adoption for their baby sister.

termination of parental rights, unless one of the specified circumstances provides a *compelling* reason for finding that termination of parental rights would be detrimental to the child. The specified statutory circumstances . . . 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.'" (*In re Celine R.* (2003) 31 Cal.4th 45, 53, italics added (*Celine R.*), italics added.) "'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.'" (*Ibid.*)

The parent has the burden of establishing by a preponderance of the evidence that a statutory exception to adoption applies. (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) The parent must show both that a beneficial parental relationship exists *and* that severing that relationship would result in great harm to the child. (*Id.* at pp. 1314-1315.) A juvenile court's finding that the beneficial parental relationship exception does not apply is reviewed in part under the substantial evidence standard and in part for abuse of discretion: The factual finding, i.e., whether a beneficial parental relationship exists, is reviewed for substantial evidence, while the court's determination that the relationship does or does not constitute a "compelling reason" (*Ibid.*; see *Celine R.*, *supra*, 31 Cal.4th at p. 53) for finding that termination of parental rights would be detrimental is reviewed for abuse of discretion. (*Bailey J.*, *supra*, at pp. 1314-1315; accord, *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622.)

Even if we assume the evidence shows that the child shared a positive bond with her parents, the ultimate question we must decide is whether the juvenile court abused its discretion by failing to find that termination of parental rights would be so detrimental to

the child as to overcome the strong legislative preference for adoption. That decision is entrusted to the sound discretion of the juvenile court. (*Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1314-1315.) We cannot find an abuse of discretion unless the court exceeded the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) "'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*Id.* at p. 319.)

Here, the evidence indicated that both mother and father maintained regular visitation and contact with M.M. However, it fell short of establishing that they occupied a parental role in her life such that the benefits from preserving the parental relationship outweighed the benefits of adoption. The child was only seven months old when she was removed from her mother's care nearly one year prior to the section 366.26 hearing, and she had never lived with father. During the past year while mother was receiving services in reference to her older children, it was never clear that she discussed M.M.'s severe injuries and admitted to being the cause. At the section 366.26 hearing, she referenced what happened to M.M. and claimed she understood that while she thought she was doing something good for the child, it actually was not. Mother's older children were not opposed to M.M. being adopted, and some of them were unsure whether they wanted to return to living with mother. In contrast, M.M. was thriving in her prospective adoptive mother's home. Her development was on target and she exhibited normal eating and sleeping habits. Mother admitted that the prospective adoptive mother was agreeable to allowing ongoing visitation if parental rights were terminated. In short, there was no evidence that termination would be detrimental to the child.

9

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST

Acting P. J.

We concur:

MILLER

J.

CODRINGTON

J.